KRISTIN DOUGHERTY )
Petitioner, )
)
)
)
V. )      Case No._____
)
)
)
UNITED STATES OF AMERICA )
Respondant. )

## BRIEF IN SUPPORT

Comes now Petitioner, pro-se, and in support of his
§2255 petition states the following:

### Backround

On May 6,2009, a Grand Jury returned a forty-five count
indictment against Petitioner and numerous other defendants.
A 143 count superseding indictment was filed on January 7,2010.

Petitioner was charged with only four of the 143 counts.
Petitioner was charged with violation of:

        18 U.S.C. §1962(c) Racketeering (Count one);
        18 U.S.C. §1962(d) Racketeering Conspiracy (Count two);
        18 U.S.C. §1343 Wire fraud (Count 120), and,
        18 U.S.C. §1956 Money Laundering (Count 98)

Count 98 (money laundering) was dismissed on a motion by
Petitioner on October 4,2010. (Dkt.350)

The two predicate acts for the RICO counts are located on pp.52 and 56 in the superseding indictment. Predicate act Fourteen charged Petitioner with fraudulently obtaining labor leasing contracts by means of material false and fraudulent representations and pretenses via email in violation of 18 U.S.C. 1343.

Predicate act Sixteen charged Petitioner with encouraging or inducing an alien, Alp Aktog, to come to, enter, and reside in the United States, knowing and in reckless disregard of the fact that such coming to, entry, and residence in the United States was in violation of law, for the purpose of commercial advantage and private financial gain, in violation of 8 U.S.C. § 1324(a)(1)(A)(iv) and 18 U.S.C. § 2.

On October 24,2010, Petitioner proceeded to trial. On October 28,2010, the jury returned a verdict of guilty as to all three counts.

On april 28,2010, this court sentenced Petitioner to concurrent Sixty (60) month terms of imprisonment on all three counts. No fine, restitution, or forfeiture was ordered. Petitioner paid the $ 300.00 special assessment as required by law at sentencing.

After receiving erroneous information from Petitioner's Attorney, Nathan Owings, Petitioner did not file a notice of appeal or pursue a timely appeal.

This §2255 petition follows.

2.

# ARGUMENTS AND AUTHORITIES

## ISSUE 1

**PETITIONER'S COUNSEL NATHAN OWINGS RENDERED INEFFECTIVE
ASSISTANCE UNDER THE SIXTH AMENDMENT OF THE U.S. CONST.
BY FAILING TO ADEQUATELY CONSULT WITH PETITIONER ABOUT
ADVANTAGES AND DISADVANTAGES OF TAKING AN APPEAL**

A claim of ineffective assistance of counsel is governed
by the standard set forth in **Strickland V. Washington, 466 U.S.
668, 104 S.Ct. 2052, 80 L.Ed 2d 674 (1984)**. "This standard
requires [the petitioner] to show that his 'trial counsel's
performance was so deficient as to fall below an objective
standard of reasonable competence, and that the deficient per-
formance prejudiced his defense."' **Nave V. Delo, 62 F.3d 1024,
1035 (8th Cir.1995) cert. denied, 517 U.S. 1214, 116 S.Ct. 1837,
134 L.Ed. 2d 940 (1996) (quoting Lawrence V. Armontrout, 961
F.2d 113, 115 (8th Cir.1992))** this analysis contains two comp-
onets: a performance prong and a prejudice prong. **Fn.1**

Petitioner has a Statutory right to an appeal pursuant to
**28 U.S.C. §1291** and other applicable Statutes and authorities.

Since an appeal is a Statutory right afforded Petitioner
by law the right to assistance of counsel and Due Process also
attaches.

The United States Supreme Court in **Roe V. Flores-Ortega,
528 U.S. 470, 145 L.Ed. 2d 985, 120 S.Ct.1029 (2000)** held that
Strickland, supra, was the proper framework for evaluating a

---

Fn.1 For purposes of Petitioner's ineffective claims and
Strickland's application to these claims, Petitoner will not
elaborate on the cause and prejudice showings as petitioner is
sure this court is well versed with this all to familiar case.

Case 4:09-cr-00143-ODS   Document 592-1   Filed 01/27/12   Page 3 of 48

claim that criminal defense counsel was constitutionally ineffective for failing to file a notice of appeal. Under Strickland, supra, a defendant must show (1) that counsel's representation "fell below an objective standard of reasonableness," id. at 688, and, (2) that counsel's deficient performance prejudiced the defendant. id. at 694.

A Court must:

"judge the reasonableness of counsel's conduct on the facts of the particular case, viewed as of the time of counsel's conduct." 466 U.S. at 690

The Flores Court stated in dicta that:

"The question whether counsel has performend deficiently in such cases is best answered by first asking whether counsel in fact consulted with the defendant about an appeal. By "consult," the court means advising the defendant about advantages and disadvantages of taking an appeal and making a reasonable effort to discover the defendant's wishes." Id.at 578 U.S. 472

In the instant case Petitioner does not dispute that his counsel consulted with him regarding the filing of a direct appeal. Petitioner's argument is that counsel provided Petitioner with erroneous information and advice and but for this erroneous information / advice, Petitioner would have pursued a direct appeal. As the Supreme Court stated in Flores, "consult" means advising the defendant about advantages and disadvantages of an appeal. Id.at 478

This was not done in the instant case. Petitioner's counsel erroneously informed petitioner that "any forfeiture would be done at the time of sentencing" **Ex.1 Fn.2**

Fn.2 On August 23,2011, The Government filed a civil forfeiture action against petitioner's property based on the case annexed to this petition. See Case No.11-00818-CV-W-GAF

4.

Obviously, this turned out to be erroneous information due to the fact that the Government later brought a civil forfeiture action.

Had Petitioner known that he would be exposed to any civil litigation as a result of this conviction Petitioner would have absolutely pursued an appeal. In other words, but for counsel's erroneous "consultation" Petitioner would have filed an appeal.

This Petitioner was repeatedly assured by counsel that his business with the Government was done after sentencing and that any forfeiture, restitution, or, fine would be handeled at sentencing. This was a critical factor for Petitioner when he decided not to pursue an appeal.

Counsel's actions deprived Petitioner of Due Process and a direct appeal in this case. Petitioner had numerous other meritorious appeal issues that were preserved at trial and has documentory evidence of his intent to appeal in this case were it not for counsel's erroneous consultation.

### Cause

Under the first prong of Strickland, supra, Petitioner must show that counsel's performance "fell below an objective standard of reasonableness," id.at **466 U.S. 688**

In the instant case counsel's actions clearly fell below an objective standard of reasonableness. Any competent counsel would have known and advised his client that the Government could (and very possibly would) pursue a seperate civil action for forfeiture subsequent to federal sentencing. This is especially true in a white collar RICO case. Counsel had a duty to inform

5.

his client that a conviction in the instant case would put Petitioner in an extremely vulnerable position in a civil forfeiture action since some of the facts would already be proven for the government. There is simply no logical reason that counsel would not know this. It was certainly not a strategic move and is probably attributable to counsel being inexperienced in dealing with complex white collar issues and RICO. **Fn.3**

## Prejudice

The second prong of Strickland, supra, requires "[T]hat there is a reasonable probability that, **but for** a counsel's unprofessional errors, the result of the proceeding would have been different." **Strickland, 466 U.S. at 694, Id.** [Emphasis added]

First, Petitioner can show prejudice by the fact that Counsel's actions led to the forfeiture of Petitioner's appeal. Second, in a scenario such as this one prejudice is presumed. The Supreme Court in Flores-Ortega, supra, stated that:

> "[D]enial of the entire [appellate] proceeding also demands a presumption of prejudice because no presumption of relieability can be afforded to [a] judicial proceeding that never took place." **id., at 528 U.S. 472**

Third, The Flores-Ortega Court also enunciated that:

> "[Other] evidence that there were nonfrivolous grounds for [an] appeal or that the defendant promptly--

---

Fn.3 Apparently this was counsel's FIRST trial and counsel was inexperenced in this area of law.

6.

expressed a desire to appeal will often be highly rel-
evant in making this determination." **id., at 485**

Evidence in support of Petitioner's desire to appeal are
attached in **Exhibit 2**, and, Petitioner incorporates the follow-
ing issues for a showing that Petitioner had "other nonfrivolous
issues for appeal."

## Conclusion as to Issue 1

Based on the foregoing arguments, and, arguments incorp-
orated below, Petitioner should be restored to the position he
was in prior to Counsel's erroneous consultation. See e.g.,
**Barger V. United States, 204 F.3d 1180, 1182 (8th Cir.2000)**
(The appropriate remedy for failing to file notice of appeal
is to resentence Movant, thus affording him an opportunity to
take a timely direct appeal.) Petitioner should be resentenced
so that he may pursue a direct appeal. **Fn. 4**

Resentencing so Petitioner could take a direct appeal would
be consistent with all other circuits that have addressed similar
situations where petitioner's were denied direct appeals due to
ineffective assistance of counsel or other related problems.

Again, but for counsel's errors, Petitioner would have
taken an appeal. Petitioner specifically incorporates Issues
2, 3, 4, 6, 9, 10, and, 12 into this issue in addition to **Ex.3**.

---

Fn. 4 Petitioner wishes to bring to this court's attention the
fact that should this court deny Petitioner's direct appeal
argument above and the appeals Court reverses, then all the
subsequent issues in this petition including one will have been
litigated for nothing and will have to be litigated again on direct.

7.

ISSUE 2

## COUNSEL RENDERED INEFFECTIVE ASSISTANCE UNDER THE SIXTH AMENDMENT OF THE U.S. CONSTITUTION BY NOT OBJECTING TO AN ERRONEOUS APPLICATION OF 8 U.S.C. 1324(a)(1)(A)(iv) WHICH VIOLATED PETITIONER'S FIFTH AMEND. RIGHTS UNDER THE UNITED STATES CONSTITUTION

8 U.S.C. § 1324(a)(1)(A)(iv) makes it a crime to encourage or induce an alien to come to, enter, or reside in the United States, knowing or in reckless disregard of the fact that such coming to, entry, or residence is, or, will be in violation of law.

8 U.S.C. § 1324(a)(1)(C) is a limiting Statute which reads:

"It is **not** a violation of clauses [clause] (ii) or (iii) of subparagraph (A), or of clause (iv) of subparagraph (A) **except** where a person encourages or induces an alien to come to or enter the United States, for a religious denomination having a bona fide nonprofit, religious organization in the United States, or the agents or officers of such denomination or organization, to encourage, invite, call, allow, or enable an alien who is present in the United States to perform the vocation of a minister or missionary for the denomination or organization in the United States as a volunteer who is not compensated as an employee, notwithstanding the provision of room, board, travel, medical assistance, and other basic living expenses, provided the minister or missionary has been a member of the denomination for at least one year."

### Argument

8 U.S.C. 1324(a)(1)(C) is a limiting Statute that prohibits 8 U.S.C. 1324(a)(1)(A)(iv)'s application to anything other than the provisions set forth in § 1324(a)(1)(C).

A plain reading of § 1324(a)(1)(C) and predicat act Sixteen in Petitioner's superseding indictment (Dkt.184, p.56) shows Petitioner is actually innocent of violating § 1324(a)(1)(A)(iv).

8.

Predicte act Sixteen states:

"On or about... Kristin Dougherty, aiding and abetting... encouraged and induced an alien, namely, Alp Aktog, to come to, enter and reside in the United States, knowing and in reckless disregard of the fact that such coming to, entry, and residence in the United States was in violation of the law...

Predicate act Sixteen says nothing of the religious component that must be present and alleged to invoke § 1324(a)(1)(A)(iv). It is well established that when the Statute's language is plain, the sole function of the court is to enforce it according to its terms, unless such disposition is absurd. **Lamie V. U.S. Trustee, 540 U.S. 526, 157 L.Ed 2d 1024, 124 S.Ct.1023, 1030 (2004)**

## Cause

In the instant case the Statute is clear and unambiguous and Counsel should have known that **§1324(a)(1)(C)** was a limiting Statute which precluded **§ 1324(a)(1)(A)(iv)**'s application to Petitioner in the instant case. **§ 1324(a)(1)(C)**'s "except" provision makes Petitioner "actually innocent" of violating § 1324(a)(1)(A)(iv). Without this predicate act, the RICO charges against Petitioner must fall since RICO requires at least two predicate acts of racketeering activity. **18 U.S.C. §1961(5)** There could be no strategic for counsel's not arguing this and had Counsel raised the issue this court would have dismissed this count, or, the jury would have found Petitioner not guilty had counsel argued this point.

9.

## Prejudice

With respect to prejudice, Petitioner must show actual prejudice. "actual prejudice" with respect to a conviction arises when absent the errors, the factfinder would have had a reasonable doubt respecting guilt. **Strickland, supra, at 466 U.S. 695**

Had Petitioner's Counsel invoked and argued **§ 1324(a)(1)(c)'s** provisions either in a **F.R.Crim.P. 12(b)(3)(A)** pretrial motion, or, as a defense to the jury, Petitioner could not have been convicted under RICO as **§ 1324(a)(1)(C)** removes one of the two predicate acts needed for a RICO and RICO conspiracy conviction.

Based on the above, Petitioner's RICO, and, RICO conspiracy should be vacated.

10.

ISSUE 3

### PETITIONER'S COUNSEL RENDERED CONSTITUTIONALLY DEFICIENT ASSISTANCE UNDER THE SIXTH AMENDMENT OF THE U.S.CONST-ITUTION BY FAILING TO INVESTIGATE, DEPOSE & SUBPOENA GOVERNMENT WITNESS ALP AKTOG

Petitioner incorporates the previous Strickland analysis and test for purposes of this argument also.

Petitioner was charged with a RICO predicate Act of violating 8 U.S.C. § 1324(a)(1)(A)(iv) which reads:

"(1)(A) any person who--
(iv) encourages or induces an alien to come to, enter, or reside in the United States, knowing or in reckless dis-regard of the fact that such coming to, entry, or residence is or will be in violation of law;"

### ENCOURAGES OR INDUCES

Encourage or induce in §1324(a)(1)(A)(iv) puts the aliens state of mind into play when a defendant is charged under the above Statute. In Petitioner's case Mr.Aktog's state of mind was a critical issue in the encourage or induces part of the Statute.

Petitioner's counsel did not ever attempt to interview, depose or suponea this witness which violated Petitioner's **5th & 6th Amendment** rights under the **U.S.Constitution.**

Counsel's actions deprived Petitioner of any defense by not bringing the Government's assertions into play. Alp Aktog was an alien in the United States under multiple visas and was constantly soliciting various employers for work and work visas. Petitioner's Counsel had a duty to investigate and

11.

and subpoena this alien for Petitioner's defense before he fled the country. In fact, trial Counsel was made aware of this and notified via email that he should depose and subpoena Mr. Aktog before he fled. **Ex. 4** This was not done to Petitioner's detriment.

Instaed of Petitioner's Counsel deposing and subpoenaing Mr.Aktog as a witness, Petitioner's Counsel relied on the Government to produce Mr.Aktog at trial since he was already a Government witness and listed on the Governments witness list. **Ex. 5**

A few days before trial the Government informed Petitioner's Counsel that Mr.Aktog would not be appearing because he had fled the Country. Petitioner's Counsel objected to Mr.Aktog not being present for trial and ultimately filed a motion to dismiss based on the Governments not producing Mr.Aktog.

Ultimately Petitioner was unable to defend himself and was prejudiced in his defense because he could not call Mr.Aktog who would have testified, consistent with the documented evidence, that he was the one who was seeking employment and residence in the United States through various employers and agencys.

In other words Mr.Aktog was predisposed to residing in the United States in violation of the law and was in fact already in violation of the law when Petitioner supposedly made him reside in the United States in violation of the law. There is documented evidence in possession of the Government that establishes that Mr.Aktog had procured dual alien work petitions himself and sought out other employers prior to and while employed for Giant Labor Solutions.

12.

The bottom line in this case is Mr. Aktog was the one who was actively pursuing employment in violation of the law and Petitioner was denied any opportunity to show this at trial due to Counsel's deficient performance. Petitioner's Counsel's deficient performance not only prejudiced Petitioner's defense, it also denied Petitioner Due Process.

Mr. Aktog was the only witness who could testify as to what his state of mind was and Counsel should have at a minimum investigated and deposed this witness before he fled the country.

### Cause

Under the Sixth Amendment of the Constitution a defendant in a criminal case has the right to have compulsory process to procure the attendance of witnesses. The United States Supreme Court in **Washington V. Texas, 388 U.S. 14, 18 L.Ed 2d. 1019, 87 S.Ct. 1920 (1967)** explained the nature of the Sixth Amendment right to compulsory process as follows: "The right to offer the testimony of witnesses, and to compel their attendance, if necessary, is in plain terms the **right to present a defense**." Id., at 19

Petitioner's Counsel failed to use this process and the result was that Petitioner had no way to refute the encourage or induce elements of the offense. Petitioner was denied through Counsel's actions Due Process and a defense to the charge.

The Eigth Circuit has contineously stressed the importance of investigating likely prosecution witnesses, **See e.g., Couch V. Trickery, 892 F.2d 1338, 1344-48 (8th Cir. 1981)**, Counsel's actions deprived Petitioner of a defense and but for

13.

Counsel's actions the results of the proceeding would have been different. Mr.Aktog would have testified that he was the solicitor and not Petitioner. Petitioner never met, spoke with, or had any contact with this individual in his life and Mr.Aktog would have verified this also.

## Prejudice

Petitioner was prejudiced in that he was denied any meaningful way to refute the Governments allegations. Counsel's actions allowed the only person who could have refuted the Governments claim to flee the country without being deposed violating Petitioner's due Process rights.

Petitioner was deprived of his ability to present evidence to the jury that Alp Aktog was not encouraged or induced to reside in the United States in violation of the law.

ISSUE 4

**COUNSEL RENDERED INEFFECTIVE ASSISTANCE UNDER THE SIXTH AMENDMENT OF THE U.S. CONSTITUTION BY FAILING TO INVESTIGATE AND DEFEND PETITIONER IN COUNT 120 TO WIT: WIRE FRAUD**

Petitioner incorporates the previous Strickland analysis and test for this issue.

Petitioner is actually innocent of Count 120, wire fraud. To prove actual innocence a defendant must show, in light of all evidence, that "it is more likely than not that no reasonable juror would have convicted him." **Schlup V. Delo, 513 U.S. 298, 327-28, 115 S.Ct. 851, 130 L.Ed 2d 808 (1995).**

The gravaman of Petitioner's claim here is that the Gov-

14.

ernment neither alleged nor proved a valid theory / claim of
wire fraud due to :

> 1) The Government neither alleging nor showing that any
> principal, or Petitioner fraudulently obtained any
> labor leasing as alleged in Count 120.

> 2) The Government never alleged or showed any tangible
> loss as required by **McNally V. United States, 483 U.S.
> 350, 97 L.Ed. 2d 292, 107 S.Ct. 2875 (1987)** as to any
> company regarding labor leasing contracts.

> 3) The Government never alleged or showed a victim of
> labor leasing fraud.

> 4) The Government never showed any harm contemplated to
> any victim of the wire fraud as required by Statute.

To convict a defendant of wire fraud, courts have held that
the Government must prove that the defendant intended to harm or
defraud the alleged victim.
In the instant case the Government failed to name any victim in
the Indictment, or, allege during trial any "victim" of the
supposed wire fraud. These omissions violated Petitioner's
Due process rights and Counsel for Petitioner was ineffective
for not arguing this point. "The right of an accused in a
criminal trial to due process is, in essence, the right to a
fair opportunity to defend against the State's [Or Federal Gov-
ernments] accusations." **Chambers V. Mississippi, 410 U.S. 284,
294, 93 S.Ct. 1038,1045, 35 L.Ed. 2d 297 (1973)**

Thus, the Government was required to allege an entity or
person who was defrauded at some point in its case. This did
not happen and Counsel for Petitionerrendered ineffective
assistance be not calling the Government on it.

### Cause

Counsels actions allowed the Government to convict Pet-

15.

itioner without identifying any victim or any loss to any victim as to Count 120 and RICO predicate act Sixteen. This clearly violated Petitioner's **5th & 6th Amend.** rights under the **U.S.Constitution**

Any competent Attorney would have filed a bill of particulars requesting specificity as to who the victims were and how they lost something intrinsic. Counsel's actions let the Government convict Petitioner on a vague allegation that violated Due Process by relieving the Government of its burden of proof at trial.

But for Counsel's errors Petitioner would not have been convicted as the Government could not have shown or proved any "fraudulently obtained labor leasing contract" or, any victims who lost money or property, or, that, an entity did not receive what it bargained for. Additionally, the Government did not show that any principal actually committed any fraud since Petitioner was charged with aiding and abetting. It is incumbant upon the Government to prove that the persons allegedly aided and abetted did commit the substantive offense. **United States V. Barfield, 447 F.2d 85,89 (5th Cir.1971)**

## Prejudice

Petitioner was prejudiced by the fact that he was convicted of a nonexistant offense for which he is actually innocent and is now serving time for.

16.

ISSUE 5

## PETITIONER'S CONSEL RENDERED CONSTITUTIONALLY DEFICIENT ASSISTANCE UNDER THE SIXTH AMENDMENT OF THE U.S.CONST-ITUTION BY INFORMING THE JURY AND THE GOVERNMENT THAT ADVICE OF COUNSEL DEFENSE WOULD BE USED AS A DEFENSE

Petitioner incorporates the previous Strickland analysis and test for this argument.

### Argument

Petitioner's Counsel Nathan Owings informed the Government that he would be using advice of counsel as a defense in Petitioner's case. **Tr.tr.p.7**
Petitioner's Counsel also used this argument as a defense to the Jury numerous times over the four day trial. Petitioner was prejudiced by this action in that:

1) The Government was allowed to view and utilize Attorney Client privileged information that prejudiced Petitioner;

2) It allowed the Government to bring in and use perjured testimony of Carol Pecoraro that was unfairly prejudicial; and,

3) Counsel did not object to a Jury instruction that pre-cluded the Jury from considering the fact that Petitioner used Attorneys to complete and file immigration documents. (Advice of counsel)

### Cause

Counsel for Petitioner had a duty to make a reasonable investigation into the facts of this case. Counsel's actions

17.

in invoking an advice of counsel defense allowed the Gov-
ernment to review all Attorney client privileged information
and to consult with Petitioner's Immigration Lawyers.

This uninvestigated defense that was unnecessary resulted
in prejudicial evidence being admitted and used against Pet-
itioner at trial.

For example, during trial the Government called Carol
Pecoraro to the stand who was and still apparently is
the general manager for Mariott Hotel. Mrs.Pecoraro testified
that she was called by some unidentified man with a foreign
accent and informed that he was sending her workers. When she
informed him that she did not order any (alien) workers he
argued with her and ultimately sent her a contract that matched
one that was also, mysteriously, in her own file in her office.

The Government ran with this obviously perjured testimony
to establish fraud in this case. When Petitioner's counsel
attempted to argue an objection to this being admitted
the prosecutor, Mr.Meiners, argued:

> "It appears the defense is attempting to use advice of
> counsel as a defense in this case including Mr.Kotic,
> whose name has been mentioned prominently during their
> [Defense's] case." **Tr.tr.p.509,L.12-16**

The Court overruled Mr.Owings [Petitioner's Attorney]
objection and allowed Mrs.Pecoraro's testimony because Defense
Counsel in this case was invoking an advice of counsel defense.

This testimony was the only evidence of fraud in this case
and it had nothing to do with Petitioner and would not have been
allowed had an advice of counsel defense not been invoked.

18.

The gist of Mrs. Pecoraro's incredible testimony was that fraud had been committed because someone had signed her name on a labor service agreement and somehow managed to get into her building and in her office and plant a fraudulent, forged, labor service contract into her file. **Tr.tr.pp.435-38.**

First, Had counsel properly investigated in this case he would have known that an advice of counsel defense was not needed.

Second, Counsel would have also known that there was animosity between Petitioner and his Immigration Attorney due to a financial dispute and that he would not provide favorable testimony to Petitioner on that fact alone.

Third, Using an advice of counsel defense and then allowing a jury instruction prohibiting the jury from considering the fact that Attorneys were used was clearly not strategy.

### Cause

Counsel went into this case and opened the door for the Government to utilize Attorney-client priviledged information for absolutely no reason. There could be no strategic reason for counsel to invoke an advice of counsel defense, allow the Government to get a trove of Attorney-client information and then allow a jury instruction that prohibits the jury from considering advice of counsel as a defense.

### Prejudice

Petitioner was prejudiced by the fact that Counsel's actions opened the door for the Government to inject evidence that otherwise would not have been admitted and was the only

19.

evidence of any fraud in this case. This evidence was so prejudicial that certainly changed the outcome of the case with respect to the fraud allegations since this was the ONLY evidence of fraud the Government presented.

ISSUE 6

### COUNSEL RENDERED CONSTITUTIONALLY DEFICIENT ASSISTANCE UNDER THE SIXTH AMENDMENT OF THE U.S. CONSTITUTION BY FAILING TO DEFEND PETITIONER AGAINST AN INVALID GOVERMENT THEORY

Petitioner incorporates the previous Strickland analysis and test for this issue.

The Government's trial theory was that Petitioner violated 8 U.S.C. 1324(a)(1)(A)(iv) by causing Alp Aktog to work outside of his H2-B visa parameters in violation of Immigration law.

Specifically, the Government relied on "[T]wo calls that Mr. Dougherty participated in regarding Alp Aktog." **Tr.tr.p.794 L.7-8** These calls supposedly placed Alp Aktog outside of his visa parameters making him in violation of the law. "[H]e [Petitioner] caused Alp Aktog to become illegal and to reside in the United States illegally because Alp Aktog was petitioned to work in Kansas City as a housekeeper, [and] Mr. Dougherty caused him to work elsewhere and ultimately reside in Florida in the Keys..." **Tr.tr.p.794,L.17-22.**

Petitioner's argument here is that one cannot aid and abet a completed crime, and Petitioner's Counsel rendered ineffective assistance by not arguing the point.

20.

Documentary evidence in possession of the Government
(Alp Aktog's visa history, employment records, and co-defend-
ant Abrorkhodja Askarkhodjaev statements) shows, and will show,
that, Alp Aktog was already residing in the United States
illegally before Petitioner ever entered the picture.
Additionally, documentary evidence in possession of the Gov-
ernment will also show that Petitioner was mislead about Alp
Aktog's real status and the Government knew this prior to trial.

At trial the Government argued that Petitioner caused
Mr.Aktog to become illegal because Petitioner sent him to
work in South Carolina, from Florida. **Tr.tr.p.402,L.20-25**
First, even if this was accurate, the law does not consider
him out of status until he actually starts working on the job.
Mr.Aktog did not at any time work in South Carolina, he returned
to Florida without working. **Tr.tr.p.402,L.23-25**
Second, Mr.Aktog was out of status and illegal of his own vol-
ition prior to Petitioner ever hearing his name. Mr.Aktog had
multiple parallel visas that overlapped at the same time. **Tr.tr.
p.425,L.18-20** Thus, Mr.Aktog was residing in violation of the
law of his own doing prior to any act by Petitioner.
Third, one cannot aid and abet a completed crime as charged
by the government in RICO predicate act Sixteen.
Fourth, the Government and Petitioner's counsel were well aware
that Petitioner knew nothing of Mr.Aktog's illegal status since
co-defendant Abror informed them of this days before Petit-
ioner's trial.

## Cause

Petitioner's invalid theory argument above clearly shows that Alp Aktog was alreading residing in the United States in violation of the law and that the Government's trial theory had a fatal flaw in it from the beginning.

Any competent Attorney would have recognized the fact that you cannot aid and abet a completed act, nor can one make someone illegal twice. Alp aktog was already out of status and illegal without any influence from Petitioner. But for Counsel's deficient assistance Petitioner would not have been convicted on this invalid theory.

## Prejudice

Prejudice flows from the fact that Petitioner was convicted of aiding and abetting a completed act which the alien himself caused.

## ISSUE 7

### COUNSEL RENDERED INEFFECTIVE ASSISTANCE UNDER THE SIXTH AMENDMENT OF THE UNITED STATES CONSTITUTION BY ADMITTING GUILT IN OPENING ARGUMENTS AND BY INFORMING THE JURY THAT THEY WILL FIND PETITIONER GUILTY

Petitioner incorporates the previous Strickland analysis and test for purposes of this issue.

During opening arguments in this case Counsel made several critical errors that were so prejudicial to Petitioner that failing to vacate the case on these errors would result in a miscarriage of justice.

22.

    <u>First</u>, counsel for Petitioner admitted during opening argument that Petitioner was guilty of the **8 U.S.C. § 1324(a)(1)(A)(iv)** offense (encouraging or inducing an alien to reside in the U.S. in violation of law) by uttering to the jury:

> "[A]nd as I stated, Mr.Aktog ultimately ended up in mertle Beach. And,yes, he did work on a contract for a few days that Anchor had secured in South Florida. **I apologize" Tr.tr.p.37,L.12-14**

This was the very fact that the Government was trying to prove to the jury and a fact that Petitioner was trying to defend against. For Counsel to admit guilt in the first 15 minutes of the case defies logic and was in no way strategic.

    <u>Second</u>, after admitting guilt, Counsel's next instruction to the jury was to find guilt. Counsel stated to the jury:

> "[A]nd when you find my client Kristin Dougherty guilty..." **Ex.6 Fn.5**

    Petitioner has a Constitutional right to effective assistance of counsel under the **Sixth Amendment of the U.S.Constitution**. When some of the first words out of counsel's mouth are admitting guilt and acknowledging guilt, that is not the assistance guaranteed under the **6th Amendment**. There can be no rational strategy for these types of utterences and it clearly had an impact on the jury (and the spectators) in this case.

    In addition, there are numerous other instantances of this type of idiocy throughout the trial that mysteriously did not make it into the trial transcripts.

---

Fn.5 These words were omitted from the transcript, Petitioner believes deliberately. There are also numerous other omissions that will be addressed in the following argument. (Issue)

Case 4:09-cr-00143-ODS   Document 592-1   Filed 01/27/12   Page 23 of 48

Cause

Counsel's unprofessional errors in this issue could in no way be imputed to strategy. Counsel directed a verdict of Guilty and in a case such as this prejudice should be presumed.

## ISSUE 8

PETITIONER'S FIFTH AMENDMENT RIGHTS UNDER THE UNITED STATES
CONSTITUTION WERE VIOLATED BY THE FACT THAT THE TRIAL
TRANSCRIPTS PRODUCED BY CYNTHIA JOHNSON, THIS
COURT'S COURT REPORTER ARE NOT VERBATIM AND DO
NOT REFLECT WHAT WAS SAID THROUGHOUT THE
PROCEEDINGS

Pursuant to 28 U.S.C. § 753(b), Court reporters are required to record and transcribe "all proceedings in criminal cases had in open court."
The provisions are mandatory and supplant any inconsistent local custom.

> "A criminal defendant has a right to a record on appeal that includes a complete transcript of the proceedings at trial." **United States V. Neal, 27 F.3d 1035, 1043-44 (5th Cir. 1994)**

When a court reporter has failed to record part of the trial proceedings, "the appropriate procedure is to vacate the judgement and remand for a hearing to determine whether appellant was prejudiced by the error in failing to record [or transcribe] the arguments. If the court concludes he was a new trial may be ordered. **United States V. Anzalone, 886 F.2d 229, 231-32 (9th Cir.1989)**

While Petitioner is not on direct appeal, but is proceeding

24.

pursuant to § 2255 he still has a right to transcripts that adequately reflect the proceedings that took place. This holds true since both are conferred by Statute, and thus the same principals apply equally to both.

<u>Argument</u>

In the case at bar Petitioner has documented proof that numerous parts of the trial transcripts and sentencing transcripts were either intentionally omitted from the trial transcripts and sentencing transcripts or were intentionally omitted from the transcribed version of the proceedings.

As will be explained further below, some of the issues and language Petitioner was to use and reference to for this § 2255 petition has been redacted from the trial and sentencing transcripts. This action by the Court Reporter violates Petitioner's **Fifth Amendment Right** under the **U.S.Constitution.**

Petitioner will not go into every omission here but will show good cause for an evidentiary hearing to further develop the record and establish prejudice.

The following are some omissions and areas of omissions:

1) During opening argument defense counsel stated to the jury "When you find my client Kristin dougherty guilty." (See **Ex.6** for support of occurance, and **Tr.tr.pp.29-38** for support of omission.)

2) At sentencing when after the Honorable Judge Ortrie Smith sentenced Petitioner there was dialog between Judge Smith and Petitioner regarding sentencing and appeal that

25.

does not reflect what was said.

3) There are several other instantances where parts of the record were stripped out of the transcripts and as a result Petitioner cannot adequately raise all issues he wanted to present in this petition.**Fn.6**

Based on the foregoing Petitioner respectfully requests an evidentiaty hearing to further develop the record on this issue in addition to finding out why the transcripts were doctored in the first place.

ISSUE 9

### COUNSEL FOR PETITIONER RENDERED CONSTITUTIONALLY-- DEFICIENT ASSISTANCE UNDER THE SIXTH AMENDMENT OF THE UNITED STATES CONSTITUTION BY FAILING TO OBJECT TO AN ERRONEOUS JURY INSTRUCTION THAT ALLOWED THE JURY TO DELIBERATE UNDER AN INCORRECT LEGAL STANDARD

Petitioner incorporates the preceeding Strickland analysis and test for this issue.

### ERRONEOUS AIDING AND ABETTING JURY INSTRUCTION

Federal law codifies several common law precepts, making it criminal to aid in the commission of a crime, and to protect and hide the wrongdoer and evidence of a crime. The "principal" portion of **Title 18 U.S.C.** has two pertinent subdivisions, which provide, in part, that (a) whoever "aids, abets, counsels, commands, induces, or procures" the commission of an offense,

---

Fn.6 As a result of these omissions, Petitioner filed a motion with this Court for a copy of the oral record. As of this writing 1-13-2011, this motion has not been ruled on.

26.

is punishable as a principal **(18 U.S.C. § 2(a))**, and (b) whoever **willfully** causes an act to be done which if directly performed by him or another would be an offense against the United States, is punishable as a principal **(18 U.S.C. § 2 (b))**.[Emphasis added]

## Argument

The jury instructions omitted "willfully" in the and abetting instruction and replaced "willfully" with "recklessly disregarded" **(J. Inst. No. 25, (3))**

This allowed the jury to find guilt based solely upon a reckless disregard standard that lowered the Governments burden violating Petitioner's Fifth Amendment right to due process. Petitioner's Counsel provided ineffective assistance by failing to object to this erroneous jury instruction as the error was plain and effected Petitioner's substantial rights.

## Cause

Counsel's failure to object to an erroneous jury instruction that had relieved the Government of its burden of proof could have in no rational way been strategic as it aided the Government in securing a conviction by removing the proper mens rea under the aiding and abetting theory.

## Prejudice

Willfulness, like intent or premeditaion, is a subjective element the exhistance of which usually must be inferred from evidence of overt acts, but if the jury is not instructed that willfulness must be found to have exhisted, the danger is great

27.

that a conviction may result on the basis of overt facts alone.

In **Sullivan V. Louisiana, 508 U.S. 275, 113 S.Ct. 2078, 124 L.Ed. 2d 182 (1993)** the trial court gave the jury a defective "reasonable doubt" instruction in violation of the defendants 5th and 6th Amendment rights to have the charged offense proved beyond a reasonable doubt.

The Supreme Court concluded the error was not subject to harmless error analysis because it "vitiates all the jury's findings," and produces "consequences that are necessarily unquantifiable and indeterminate." **Id., at 281** In other words it is per se prejudicial error.

In a case similar to the case at bar, the Sixth Circuit in **Reynolds V. Green, 184 F.3d 589, 594 (1999)** held that it plain error when a jury instruction allowed the jury to deliberate under an incorrect legal standard. **See also, e.g., United States V. Bryant, (6th Cir. 1972)** (It is a "grave error" to submit the case to the jury without accurately defining the offense charged and its elements [aiding and abetting].) Such an error is not excused or waived by failure to request proper instruction. Thus, the erroneouse aiding and abetting instruction was plain error, which, Counsel for Petioner should have objected to. Counsel's failure prejudiced Petitioner in that it allowed a conviction on a lesser standard and reliefed the Government of its burden of proof.

Additionally, prejudice flows from the fact that the erroneous instruction broadened the scope of the indictment by creating a constructive amendment. Removing the "willful"

28.

requirement and replacing it with "recklessly disregarded" was a prejudicial Fifth Amendment violation.

The proper remedy is to vacate Counts one and two. (RICO & RICO conspiracy)


ISSUE 10

**COUNSEL FOR PETITIONER RENDERED CONSTITUTIONALLY DEFICIENT ASSISTANCE UNDER THE SIXTH AMENDMENT OF THE UNITED STATES CONSTITUTION BY FAILING TO OBJECT TO THE COURT'S RESPONSE TO THE JURY'S QUESTION, AND, FAILING TO PROPOSE ANY COHERENT RESPONSE OR CLARIFYING INSTRUCTION TO THE THE JURY'S CONFUSION**


Petitioner incorporates the previous Strickland analysis and test for this issue. Additionally, this issue is annexed to Issues one and ten, supra, in that counsel should have encouraged and advised Petitioner to pursue these on direct review.

This was a relatively complex case that required the jury to apply some technical evidence, Statutes, and Regulations.

Following closing arguments, the jury, during deliberation, sent a note to the court requesting several exhibits. **Tr.tr. p.831** These exhibits numbers 220, 222, 1585, 529, 794, 1481, 2599, 1879, 1877, and 1880 were all related to encouraging or inducing Alp Aktog (the alien) to reside in the United States in violation of the law.

A short time later the jury sent another note to the court requesting 1) Defendant's exhibit 82,(alp Aktog's visa history) and, 2) clarification of jury instruction number 25. (The subject of the previous issue number 10)

29.

The question posed by the jury was:

> "Does re-entry or extending a visa constitute entering
> the United States, or, is entering the United States
> reserved for the physical entry into the United States?
> **Tr.tr.p.832,L.13-17**

A lengthly discussion ensued in which it is obvious that
the court, the Government, and, Petitioner's Counsel were
hopelessly confused as to what the proper instruction should
be. As evidenced by the following discussion amongst the
parties, it is clear that the parties were just as confused
as the jury, and, the Court's clarifying instruction did
nothing to answer the jury's question.**Tr.tr.p.839,L9-11**
The court's instruction was basically the same wording that
was used in instruction #25 that led to the confusion in the
first place. In addition, the instruction did nothing but
relieve the Government from its burden of proof.

The following is the discussion amongst the parties
following the jury's question, which was:

> "does re-entry or extending a visa constitute entering
> the United States, or, is entry reserved for physical
> entry into the United States?"

> Mr.Owings:[Petitioner's Atty.] Your honor, I don't know
> my opinion on that.**Tr.tr.p.832,L.15-17**

> Mr.Meiners: [Prosecutor] So there is some sort of inherent
> confusion in the aiding and abetting part of the instruct-
> ion just by way of virtue of the wording,...**Tr.tr.p.834
> L.8-10**

> The Court: ...first element of the offense that is creating
> the confusion. **Tr.tr.p.836,L.6-7** I'm inclined to give them
> [the jury] some help. I'm just not sure quite how to do
> that. I suppose, I suppose I could.... What would be in-
> accurate about telling the jury that if it finds that he
> [Petitioner] induced Aktog to come to, enter, or reside
> in the United States then he has aided and abetted the
> commission of that crime.

30.

> Is there something innaccurate about telling the jury
> about that? Is it a misstatement of the law? **Tr.tr.**
> **p.836,L.9-22,p.837,L.1**
>
> Mr.Meiners: <u>I think I totally understand their confusion</u>
> <u>we're telling them two different things</u>...**and I think for**
> **a lay person to be able to sort through that is asking a**
> <u>lot</u> Tr.tr.p.837-38,L.25-7

Based on the above and trial transcripts pp.831-840
generally, it cannot be disputed that the jury had no real
comprehension of the elements of the offense and the mens
rea requirements of the charged offenses in instruction
number 25. Including the aiding and abetting mentioned in
the proceeding issue number 9. This relieved the Government
of proving every element of the offense beyond a reasonable
doubt.

<u>Cause</u>

Under the familiar Strickland standard, Petitioner
must show the requsite cause and prejudice to prevail.

<u>First</u>,it was incumbent on Petitioner's counsel to
lodge an objection to jury instruction 25 in the first instat-
ance. This is where all the confusion came in that led to the
jury's note to the court. A plain reading shows that the sub-
stantive elements, letters "one" and, "three" were in conflict
with the aiding and abetting and elements numbers, "1" and,
"2".

**Letters** "one" and, "two", charge **"reside** in the United
States," and, **"residence** was in violation" respectively.

**Numbers** "1" and, "2" charge "inducing an alien to **enter**

31.

the United States," and, **enter** the United States illegally,"
respectively.

These instructions are in tension and are confusing to
the very experts in this case. If persons with years of law
school experience and on the job training cannot figure it out,
then Counsel for Petitioner should of done something to get it
to where a lay person comprehended the instructions. (like read
the instructions and make objections **before** they go to the jury)

Since there was no logical reason strategic or otherwise
not to object to the instructions themselves prior to them
going to the jury, and, because Counsel failed to request a
proper curative instruction, cause is imputed to counsel
under **Strickland, supra**.

<u>Prejudice</u>

Petitioner incorporates the prejudice arguments from the
proceeding issue #9. Basically it is per se prejudicial to
allow a jury to deliberate under an incorrect legal instruction
that allows a conviction on a lesser standard than is required
be law, including erroneous and confusing elements.

The above errors effected "substantial rights" of the
accused in this case and was "plain error" that mandates
reversal.

32

## ISSUE 11

**COUNSEL RENDERED CONSTITUTIONALLY DEFICIENT ASSISTANCE UNDER THE SIXTH AMENDMENT OF THE UNITED STATES CONSTITUTION BY FAILING TO INVESTIGATE, DEPOSE, OR CALL CO-DEFENDANT ABROR WHO WOULD HAVE PROVIDED EVIDENCE AND TESTIMONY ESSENTIAL TO PETITIONER'S DEFENSE**

Petitioner incorporates earlier Strickland analysis and test for this issue.

After Petitioner and co-defendant Abrorkhodja Askarkhodjaev (hereinafter Abror) picked a jury in the instant case, co-defendant Abror pled out and was debriefed by Government agents. During this debriefing Abror informed the Government that Petitioner did not know Alp Aktog's legal status and that he had no part in the charged offenses.

Counsel for Petitoner had a duty to at a minimum interview or depose Abror prior to trial. Counsel should have also called abror as a witness as he would have provided essential testimony that would have conclusively shown Petitioner's innocence in this case. Counsel for Petitioner was in possession of the 302's from the interview so he knew that Abror's test-imony could help Petitioner.

### Cause

Counse's actions deprived Petitioner of exculpatory material and testimony that would have established Pet-itioner's innocence and there was no reason for counsel NOT to at a minimum investigate the matter. There is, nor could there have bben any strategic not to investigate and depose Abror prior to trial.

33.

## Prejudice

But for Counsel's errors the results of the proceeding would have been different. Had Counsel interviewed, deposed, or called Abror as a witness he would have said that Petitioner knew nothing of Alp Aktog's supposed illegal status. **Ex.7**

In fact this is exactly what Abror told the Government during his debriefing.

34.

ISSUE 12

## PETITIONER'S COUNSEL RENDERED INEFFECTIVE ASSISTANCE AT SENTENCING VIOLATING PETITIONER'S SIXTH AMENDMENT RIGHTS BY FAILING TO OBJECT TO CLEARLY ERRONEOUS VICTIMS AND LOSS AMOUNTS UNDER USSG § 2B1.1

Due process affords defendants the right to be sentenced on the basis of accurate information. **United States V.Tucker,** 404 U.S. 443,447, 92 S.Ct. 589, 30 L.Ed. 2d 592 (1972) **Townsend V. Burke,** 334 U.S. 736, 741, 68 S.Ct. 1252, 92 L.Ed. 2d 1960 (1948).

The Sixth amendment guarantees a criminal defendant the right to effective assistance of counsel at sentencing.

The familiar Strickland analysis applies to sentencing issues and thus this Petitioner must show that there is a reasonable probability that but for counsel's errors Petitioner's sentence would have been been less harsh. Relevant factors are Petitioner's actual sentence, the potential minimum and maximum sentences that could have been imposed, the placement of the actual sentence within the range of potential sentences, and any relevant mitigating or aggravating circumstances. **United States V. Segler,** 37 F.3d 1131,1136 (5th Cir.1994)

### Argument

Petitioner's argument here is relatively straightforward and simple. The Governmnts theory throughout this case was that the victims were the alien workers, visa holders who were not paid for all hours worked, not paid overtime, and generally

35.

not paid in the manner set forth in the terms, regulations, and laws set forth by the Dept. of Labor and Customs and Immigration Service. **See e.g., Gov.'s Trial Br. Dkt.386 pp.3, 21, 22.**

At sentencing, incredibly, the Governmnt's whole theory somehow changed and the new victims were all the hotels, resorts, and other entities that were employing the aliens.
The logic of this slight of hand is absurd. At no time during Petitioner's trial or otherwise did the Government allege any victims other than the Alien workers. In fact, the predicate acts under RICO for which Petitioner was convicted; Racketeering Act Fourteen, "fraudulently obtaining labor leasing contracts" (Wire fraud), and, Racketeering Act Sixteen "encouraging or inducing an alien, namely, Alp Aktog, to come to enter or reside in the United States..." caused no one any losses.

The Government's novel use of RICO and wire fraud in this case in no way could be construed as imputing any loss on any hotel or resort as alleged in the PSR. In fact the opposite is true. If the Governments trial theory is to be believed the the Hotels, Resorts, and other employers were actually benef- ieiaries of Petitioner's supposed unlawful conduct.

For instance, in Count 120, ( Ss. Ind. p.104) the Government incorporated paragraphs one through eighty-nine of the Indict- ment. Only two paragraphs out of eighty-nine talk about losses.

Paragraphs 44, and 49. Paragraph 44 alleges that the Enter- prise failed to pay employment taxes, failed to pay H-2B workers in a manner set forth ... by the DOl and CIS.

Paragraph 49 alleges "The Enterprise profited by keeping

Case 4:09-cr-00143-ODS   Document 592-1   Filed 01/27/12   Page 36 of 48

a portion of each forein national worker's wage, failing to compensate for all hours worked, refusing to pay overtime, and fraudulently retaining payroll taxes.

Nowhere in the Indictment, or, in Petitioner's trial did the Government allege Petitioner or other caused any losses to any Hotel, Resort or other entity.

The bottom line is that no Hotel or related entity suffer any loss and Petitioner should not have had a 16 point level increase in his PSR for a fictitious loss that never occured. Without this erroneous loss amount Petitioner's guideline range would have been 12-18 months or less instead of the 108-135 months assessed at sentencing.

## Cause and Prejudice under Strickland

### Cause

Petitioner's counsel argued "losses" at sentencing and argued that the amount of the losses was excessive and the loss amounts should be reduced. **See Def. Sent. Memo. Dkt.503,pp.3-7** Counsel's arguments were based on:

1) co-defendants plea agreements losses being $400,000-1,000,000, so Petitioner's should be also,

2) lower loss amounts had been deemed accurate by this Court in defendant's cases so Petitioner's should be also;

3) Petitionr entered Conspiracy in 2004 instead of 2001 so loss should be less;

4) Petitioner did not receive Westin Hotel or Branson Mo. accounts ..., and,

5) There were no facts to support Petitioner receiving a higher loss amount than that of his co-defendants who have pled guilty.

What Petitioner's Counsel did NOT argue was that the victims who supposedly suffered losses were the aliens NOT the Hotels, Resorts, or other corporate entities. The Government basically added up all the gross receipts paid by the Hotels and called that total "losses," when in fact the Hotels, Resorts, or other related entities suffered NO LOSSES.

Counsel for Petitioner totally dropped the ball at sentencing regarding this erroneous loss calculation. There could be no strategic reason for Counsel not to argue this point.

Had Counsel objected to the Hotels and Resorts being classified as victims for loss purposes this Court would have found that this was an erroneous application of losses and contrary to the Government's trial brief and trial testimony.

The Government's losses were not only not supported by trial testimony, the Government did not even attempt to show any loss by any Hotel or other entity and Counsel for Petitioner had a duty to object to this erroneous loss calculation.

## Prejudice

The above error had an adverse effect on Petitioner in that his guideline range increased from around 12-18 months to 108-135 months. Had counsel objected to the erroneous loss calculation Petitioner's sentence would have been significantly less harsh. Petitioner received a total sentence of 60 months based on this Court's departing downward based on Petitioner's personal characteristics and charitable works in the community and numerous other reasons. This downward departure is still

38.

way outside the guideline range that should have been the starting point for this Court's downward departure.

Since this Court chose to impose a sentence below the guideline range under an incorrect guideline sentencing range, there is a reasonable probability that, had this Court been aware of the correct guideline range it would have imposed a departure from the correct guideline range also.

Therefore, there is a reasonable probability that, but for trial Counsel's failure to object to the imposition of erroneous victims and loss amounts Petitioner's sentence would have been significantly reduced. The United States Supreme Court in **United States V. Glover, 531 U.S. 198, 203 (2001)** held that any amount of actual [additional] jail time has Sixth Amendment significance.

Petitioner's additional prison time is prejudice under Glover, supra.

Petitioner should be resentenced without the erroneous loss calculations. In the alternative this Court should hold an evidentiary hearing as required by **Ryder V. Morris, 752 F.2d 327, 332-33 (8th Cir.1984)** (District court should hold an evidentiary hearing to determine if counsel was ineffective for failing to raise alleged inaccuracies in PSR)

## CONCLUSION

This case presents a prime example of overreaching by the Federal Government. Petitioner, a legitimate businessman, who tried to always follow the rules and regulations as he understood them, was pulled into a RICO case because the Government did not know where to draw the line between Criminal, Civil, and Reglatory violations.

There is no doubt that there were bad actors in this 143 count superseding indictment, but, Petitioner was not one of them. When the smoke cleared in this case all but the parties who fled pled out to four counts or less of the superseding indictment. Most received little or no prison time.

After going through thousands of pages of testimony, exhibits, and other related documents it is still not clear to Petitioner (Or the writer of this brief) what entity was the victim of labor leasing fraud. The Government certainly never named one.

In fact this whole case was built on the fly (with respect to Petitioner) and was so vague as to what Petitioner had to defend against that not even the jury understood the Strawman.

Petitioner was appointed a court appointed Attorney (who made over a **HUNDRED THOUSAND DOLLARS**)(even though he had retained his own) who was completely inexperienced in dealing with complex white collar issues, had NEVER handeled a trial before, and, was totally out of his league.

40.

The first words out of Nathan Owings (Petitioner's Attorney's) mouth to the jury were admitting guilt followed by; "[W]hen you find my client Kristin Dougherty guilty" which, pretty much summed up what was to follow.

After trial, Petitioner was adamant about appealing, but, due to pressure Petitioner felt from this court at sentencing, and, Counsel's erroneous advice / information about chances on appeal, and forfeiture issues, Petitioner did not appeal.

Upon realizing that Counsel had provided erroneous advice / consultaion relating to appeal issues, and, more importantly, erroneous information relating to any possible forfeiture, Petitioner decided to pursue the above issues. (This occured after the Government filed a Civil forfeiture against Petitioner)

Once Petitioner received his transcripts and began combing the transcripts for issues, specifically, opening arguments referenced above, Petitioner realized that the transcripts had been doctored from what was actually said at trial.

When Petitioner requested an oral copy of the proceedings the Government opposed Petitioner's request and stated that the Court reporter had offered to double check any disputed material which is simply not accurate and argued that Petitioner had not shown good cause for the request.

It is really inconceivable to Petitioner that of all the words that could have inadvertently been missed, this whole prejudicial sentence comes up missing. Is this really what American Justice has come to?

41.

While not on point but worth mentioning, imagine Petit-
ioner's suprise, when he arrived at his designated prison
at FCI-Greenville and the Federal Government in its UNICOR
factory was employing, for a paycheck, ILLEGAL ALIENS in
straight violation of **8 U.S.C. § 1324(a)(1)(A)**, and **(a)(7)**
which reads:

> "(a) Making employment of unauthorized aliens unlawful.
> (1) In General. It is unlawful for a person or **entity**
> (A) to hire... for employment in the United States an
> alien knowing the alien is an unauthorized alien...
> with respect to such employment; and,
>
> (a)(7) Application to Federal Government.
> For purposes of this section, the term "entity" includes
> any entity in **any branch of the Federal Government**"
> [Emphasis added]

Petitioner can't help but wonder who the real Racketeers
are. This was the same type of conduct that was alleged against
Petitioner. Here the Federal Government prosecutes its citizens
for Statutory violations that the Government itself is violating.

Petitioner is not in any way trying to disrespect this
Court, Government, or anyone involved in this case, but, is
merely pointing out the facts from another perspective hoping
that someone is paying attention to the absurdity of what is
occuring.

## RELIEF REQUESTED

Based on the foregoing Petitioner respectfully requests
his convictions and sentences be vacated, or, in the alternative
grant Petitioner an evidentiary hearing, direct appeal or
nay other relief this Court deems appropriate.

42.

January 15, 2012                    Respectfully Submitted,


                                    Kristin L. Dougherty
                                    #36356-044
                                    FCI-Greenville
                                    P.O. 5000
                                    Greenville, Il
                                    62246-5000




I, declare under the penalty of perjury that the foregoing is
true and correct to the best of my knowledge, information and
belief.

Executed on: 1/15-2012        X

43.

CERTIFICATE OF SERVICE

I certify that on 18th day of January, 2012, a true
and correct copy of the foregoing § 2255 petition was placed
in the U.S.Mail with sufficient First Class postage affixed
thereto, addressed to:

William L. Meiners
AUSA
400 E. 9th St.
Kansas City, Mo.
64106

X _____

44.

motions and those are the issues that will be raised on appeal. If he felt they were meritorious he would likely would have ruled in our favor.

>

> Lastly, the government alleged forfeiture counts with regard to all of the defendants including you. Specifically, they name four of your bank accounts. They also allege the substitute asset provision of the statute, which effectively means they can attempt to seize the equity in your house to satisfy a money judgment by filing a lien on it. The judge will take up forfeiture at the time of sentencing. Also, the judge is likely to enter an order of restitution which is different than the forfeiture. The restitution amount he orders may also result in a lien against the house. As a result, the potential for the lien may need to be disclosed to anybody entering into a rent to own contract. I am not a real estate lawyer, however, and do not hold myself out to be one so you may need to discuss matters with a real estate attorney. I will make some calls regarding the U.S. Attorney's policy on a the rent to own issue.

>

> When did you buy the house and how much did you put down? What do estimate your equity is in it at this time?

>

> Did you receive Dru's email from February 9th?

>

> Regards,

>

> Nathan Owings

> Wyrsch, Hobbs& Mirakian, P.C.

> 1000 Walnut Street, Suite 1600

> Kansas City, Missouri 64106

> (816) 221-0080

> NOTICE: This e-mail (including any attachments) may contain material that (1) is confidential and for the sole use of the intended recipient, and (2) may be protected by the attorney-client privilege, attorney work product doctrine or other legal rules. Any review, reliance or distribution by others or forwarding without express permission is strictly prohibited. If you are not the intended recipient, please contact the sender and delete all copies. For your information, this e-mail may not be a secure communication and could be copied and held by any computer through which it passes. Should you wish to cease e-mail communications, please advise. IRS Cir. 230 Disclosure: Any tax advice contained herein (including attachments) is not intended to be used, and cannot be used, for the purpose of (i) avoiding penalties under the I.R.C.; or (ii) promoting, marketing or recommending to another any transaction/matter addressed herein.

> This Missouri Bar Disciplinary Counsel requires all Missouri lawyers to notify all recipients of e-mail that: (1) e-mail communication is not a secure method of communication; (2) any e-mail that is sent between you and this law firm may be copied and held by various computers it passes through as it is transmitted; (3) persons not participating in our communication may intercept our communications by improperly accessing your computer or this firm's computer or even some computer unconnected to either of us that this e-mail passes through. I am communicating to you via e-mail because you have consented to receive communications via this medium. If you change your mind and want future communications to be sent in a different fashion, please advise me at once.

>

> -----Original Message-----

> From: Kris Dougherty [mailto:kris@marblefloorsandmore.com]

> Sent: Monday, February 21, 2011 6:08 PM

> To: Nate Owings

> Subject: Re: Kristin Dougherty. 2/21/2011

>

> Nate,

> In regards to my house as I emailed you the 3rd of this month. I would like to rent it with an option to buy but I do not want to do something I am not suppose to.

>   So I am still requesting information from you on this matter.

>

> I also need to make sure you ask for a setting of an appeal bond at sentencing please. I have reviewed title 18, Section 3143 in this regard.

## Nate Owings

**From:**      Kris Dougherty <kris@marblefloorsandmore.com>
**Sent:**      Tuesday, April 26, 2011 1:14 PM
**To:**        Nate Owings
**Subject:**   Re: Tomorrow

Nate,

On my allocution statement I have not given much thought to the words. I have not had any exsperance with this prior.

Kris

On 4/26/2011 11:52 AM, Nate Owings wrote:
Kris,

I anticipate meeting you at the courthouse no later than 8:30 tomorrow for sentencing at 9:30.

Please forward your draft allocution statement to Dru and I by tonight at the latest so I can review it prior to meeting you at 8:30.

One housekeeping measure, as a result of your conviction of the three charges, you will be required to pay a $300 special assessment to the court at the time of sentencing. Any other monetary issues such as restitution, fines and/or forfeiture will be determined by the judge at sentencing. The $300 will not change.

I hope all is well and you weathered the storms in St. Louis. If you have any questions, I will be available for the rest of the afternoon via phone or email.

Regards,

**Nathan Owings**
Wyrsch, Hobbs & Mirakian, P.C.
1000 Walnut Street, Suite 1600
Kansas City, Missouri 64106
(816) 221-0080

NOTICE. This e-mail (including any attachments) may contain material that (1) is confidential and for the sole use of the intended recipient, and (2) may be protected by the attorney-client privilege, attorney work product doctrine or other legal rules. Any review, reliance or distribution by others or forwarding without express permission is strictly prohibited. If you are not the intended recipient, please contact the sender and delete all copies. For your information, this e-mail may not be a secure communication and could be copied and held by any computer through which it passes. Should you wish to cease e-mail communications, please advise. IRS Cir. 230 Disclosure: Any tax advice contained herein (including attachments) is not intended to be used, and cannot be used, for the purpose of (i) avoiding penalties under the I.R.C.; or (ii) promoting, marketing or recommending to another any transaction/matter addressed herein.
This Missouri Bar Disciplinary Counsel requires all Missouri lawyers to notify all recipients of e-mail that: (1) e-mail communication is not a secure method of communication; (2) any e-mail that is sent between you and this law firm may be copied and held by various computers it passes through as it is transmitted; (3) persons not participating in our communication may intercept our communications by improperly accessing your computer or this firm's computer or even some computer unconnected to either of us that this e-mail passes through. I am communicating to you via e-mail because you have consented to receive communications via this medium. If you change your mind and want future communications to be sent in a different fashion, please advise me at once.

```
--
Marble Floors And More
Kris Dougherty
3304 N Lindbergh Blvd.
Saint Ann, MO 63074
Cell - 314.503.3062
```

| | |
|---|---|
| **From:** | Kris Dougherty <kris@marblefloorsandmore.com> |
| **Sent:** | Tuesday, February 22, 2011 5:03 PM |
| **To:** | Nate Owings |
| **Subject:** | Re: Kristin Dougherty. 2/21/2011 |

Nate,

Yes, I received Dru's email on February 9, 2011.

My house was purchased over 15 years ago and, depending on today's market, has anywhere from $10,000 to $40,000 equity.

I appreciate both yours and Dru's information although I consider it to be very vague and I have to repeatedly ask for information to get any information. And I'm not sure why.

Nate, I do not understand that you offer no encouragement on an appeal.

In the length of time you've known me you must by now surely understand my belief I've done nothing wrong and I've yet to see any true facts that show this (short of dishonest witnesses that were given reduced sentences, visas, jobs, etc.) and a jury and judge that was influenced by an aggressive and emotional prosecutor.

Nate, I would be most appreciative of any and all efforts by you to assist me in aggressively defending my case and helping me to overturn the results. There are ways to turn these results to our advantage with a successful outcome if you're a fighter and if you believe me, like I do.

I welcome your favorable response.

Kris

On 2/22/2011 12:54 PM, Nate Owings wrote:
> Kris,
>
> I'll answer your questions in reverse order.
>
> First, the trial transcripts must be ordered within 14 days of filing a notice of appeal. Some transcripts of the status conferences that took place prior to trial are available, but the most relevant transcripts will be those from the trial.
>
> Second, I still do not have a Pre-Sentence report yet. You should receive a copy from the probation office in the mail as soon as it is complete, so we will get it at approximately the same time.
>
> Third, I will request an appeal bond. However, the Judge will only issue one if it "raises a substantial question of law or fact likely to result in a reversal, an order for a new trial, a sentence that does not include a term of imprisonment, or a reduced sentence to a term of imprisonment less than the total of the time already served plus the expected duration of the appeal process." Understand that this is unlikely because Judge Smith has already ruled against us on our post-trial



USPS

UNITED STATES POSTAL SERVICE®

PRIORITY MAIL

FOR PICKU

DOMESTIC USE

**2. PAYMENT METHOD**

Affix postage or meter strip to area
indicated in upper right hand corner.

address and addressee information
in customer block (white area)
or on label (if provided).

U.S. POSTAGE
PAID
$0.00
0053985-07

The efficient FLAT RATE ENVELOPE.
You don't have to weigh the envelope...just pack all your correspondence and
documents inside and pay only the 2 lb. Priority Mail postage rate.
We Deliver.

Kristin Dougherty #36356-044
Federal Correctional Institution
P.O. Box 5000
Greenville, IL. 62246

FEDERAL BUREAU OF PRISONS
POST OFFICE BOX 4000
GREENVILLE, IL 62246

36356-044
Us Dist Court Clerk
09-00143-04-ODS
400 E 9TH ST
Kansas CITY, MO 64106
United States

RECEIVED
JAN 27 2012
U.S. DISTRICT COURT
WESTERN DIVISION
OF MISSOURI