IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | | |
|---|---|---|
| KRISTEN L. DOUGHERTY, | ) | |
| | ) | |
| Movant, | ) | |
| | ) | |
| vs. | ) | Case No. 12-0143-CV-W-ODS |
| | ) | Crim. No. 09-00143-04-CR-W-BCW |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

## ORDER AND OPINION DENYING MOTION FOR POSTCONVICTION RELIEF AND DECLINING TO ISSUE CERTIFICATE OF APPEALABILITY

### I. BACKGROUND[1]

Movant and more than ten other individuals were indicted on four counts of a 143-count Superseding Indictment. Movant was charged with the following crimes:

Count 1     racketeering in violation of 18 U.S.C. § 1962(c)

Count 2     conspiracy to engage in racketeering in violation of 18 U.S.C. § 1962(d)

Count 98    money laundering in violation of 18 U.S.C. § 1956(a)(1)(A)(i)

Count 120   wire fraud, in violation of 18 U.S.C. § 1343

Generally speaking, the Superseding Indictment charged the criminal enterprise involved the establishment of companies employing foreign nationals as laborers. The companies supplied these laborers to clients in the restaurant, hotel, casino, and construction industries. The foreign nationals were induced to enter the country illegally or to overstay their visas. Additional facts about the crimes will be set forth as they become relevant to Movant's allegations.

The jury found Movant guilty of the crimes charged in Counts 1, 2, and 120; Count 98 was dismissed before trial. The Sentencing Guidelines recommended a

---

[1]There is no need for a hearing in this matter because there are no relevant factual disputes to resolve. The issues raised can be disposed of based on the Record developed at trial, the contents of Movant's arguments, and the materials he has submitted for consideration.

sentence of 87 to 108 months, but the Court varied from the recommendation and sentenced Movant to sixty months imprisonment on each count of conviction, with the sentences to be served concurrently. Movant did not appeal.

## II. DISCUSSION

Most of Movant's claims assert ineffective assistance of trial counsel. A claim of ineffective assistance of counsel is governed by the standard set forth in Strickland v. Washington, 466 U.S. 668 (1984). "This standard requires [the applicant] to show that his 'trial counsel's performance was so deficient as to fall below an objective standard of reasonable competence, and that the deficient performance prejudiced his defense.'" Nave v. Delo, 62 F.3d 1024, 1035 (8th Cir. 1995), cert. denied, 517 U.S. 1214 (1996) (quoting Lawrence v. Armontrout, 961 F.2d 113, 115 (8th Cir. 1992)). This analysis contains two components: a performance prong and a prejudice prong.

> Under the performance prong, the court must apply an objective standard and "determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance," Strickland, 466 U.S. at 690, while at the same time refraining from engaging in hindsight or second-guessing of trial counsel's strategic decisions. Id. at 689. Assuming the performance was deficient, the prejudice prong "requires proof 'that there is a reasonable probability that, but for a counsel's unprofessional errors, the result of the proceeding would have been different.'" Lawrence, 961 F.2d at 115 (quoting Strickland, 466 U.S. at 694).

Id. Failure to satisfy both prongs is fatal to the claim. Pryor v. Norris, 103 F.3d 710, 713 (8th Cir. 1997) (no need to "reach the performance prong if we determine that the defendant suffered no prejudice from the alleged ineffectiveness"); see also DeRoo v. United States, 223 F.3d 919, 925 (8th Cir. 2000).

2

A.  Flawed Advice Regarding Appeal

Movant contends his attorney provided flawed advice that affected his decision not to pursue an appeal.  For support, he has provided e-mail communications between himself and his attorney.  The Government has supplied additional e-mail communications between Movant and counsel.  The e-mails, combined with the temporal context, demonstrate Movant is not entitled to relief.

The trial took place in October 2010, with the jury returning its verdicts on October 28.  The preliminary Presentence Investigation Report was prepared on March 21, 2011, and the final report was prepared on April 13, 2011.  The sentencing hearing took place on April 27.

A series of e-mails from early May 2011 – after the sentencing – addressed the issue of an appeal.  Among the matters addressed in evaluating the wisdom of appealing were (1) the prospects for success, (2) the risk that the Government might cross-appeal the sentence, (3) the fact that Movant had been named a target of investigations in the Eastern District of Missouri and that an appeal might heighten the possibility of being indicted, and (4) the possibility that Movant might face resentencing in front of a different judge.  Counsel recommended against an appeal, but made clear that he would file a Notice of Appeal if Movant desired.  As noted earlier, Movant eventually elected to eschew an appeal.

Movant does not contend that anything in these e-mails, or anything said following sentencing, was incorrect or otherwise flawed.  Instead, he relies on an excerpt from an e-mail from February 2011 that is part of an exchange addressing Movant's arrangements for his house while he is in prison (as it was anticipated that Movant would be given a custodial sentence).  In the excerpt, counsel discusses the fact that the Superseding Indictment included forfeiture counts that might threaten the various bank accounts and the equity in his house, but that the forfeiture count would be addressed at sentencing.  As it turns out, no forfeiture was ordered – but, on August 23, 2011, the Government instituted a civil forfeiture proceeding targeting the house.  The suit was dismissed without prejudice on November 28, 2011, at the Government's request.

3

Movant claims that counsel's failure to tell him that the Government could file a civil forfeiture proceeding was deficient performance, and that if he had known the Government could file a civil forfeiture proceeding he would have appealed his conviction. As he frames his argument in his Reply Suggestions, Movant "was led to believe that his business with the government regarding this case had concluded (including collateral consequences)." He also claims that his conviction has had additional collateral consequences, including a prohibition on him from doing business with the Government.

The Court rejects Movant's claims for two reasons. First, as a factual matter, the Record does not suggest these considerations were important to Movant. In discussing the wisdom of an appeal, there are no discussions, questions from Movant, or statements by counsel regarding the prospect of a civil forfeiture or other "collateral consequences." The discussion about criminal forfeiture does not appear in the context of considering an appeal. Moreover, that discussion does not suggest, predict, or promise that all matters between Movant and the Government will be resolved at sentencing (which had not yet occurred). The Court does not believe counsel's statements (or omissions) played a part in Movant's decision not to appeal. Second, as a legal matter, the consequences Movant complains of are speculative, collateral, and attenuated. Effective counsel cannot be expected to inform a defendant of *every* conceivable consequence of a conviction. Cf. Padilla v. Kentucky, 130 S. Ct. 1473, 1487-88 (2010) (Alito, J., concurring).[2]

## B. Failure to Object to Application of 8 U.S.C. § 1324(a)(1)

---

[2]In Padilla, the Supreme Court addressed whether effective counsel should discuss the possibility of deportation as a consequence for a guilty plea, but the consequences Movant has described do not have a "close connection to the criminal process" and are not otherwise "unique" in the same manner as deportation. 130 S. Ct. at 1481, 1482. This does not mean effective counsel can supply incorrect advice (which the Court holds did not happen here); it just means there is no Sixth Amendment requirement that counsel describe every possible consequence of a decision.

4

One of the racketeering acts alleged in support of the conspiracy – Racketeering Act 16 – alleged Movant and others encouraged an alien (Alp Aktog) to remain in the United States in violation of law in prohibition of 8 U.S.C. § 1324(a)(1)(A)(iv). This statute makes it unlawful to "encourage[ ] or induce[ ] an alient to come to, enter, or reside in the United States, knowing or in reckless disregard of the fact that such coming to, entry, or residence is or will be in violation of law." Movant argues he was actually innocent of this predicate offense because Aktog was not in the country for religious purposes. Movant's argument is rejected because it rests on a misreading of 8 U.S.C. § 1324(a)(1)(C).

That statute provides an affirmative defense that can be asserted by a defendant: it does not define the crime. More importantly, an understanding of the statute requires one to carefully adhere to the punctuation Congress employed. Based on the placement of commas, section 1324(a)(1)(C) declares that it is not a violation of

> clauses (ii) or (iii) of subparagraph (A), or
>
> of clause (iv) of subparagraph A except where a person encourages or induces an alien to come to or enter the United States

> for a religious denomination to encourage, invite, call, allow, or enable an alien present in the United States to perform work as a minister or missionary.[3]

Movant interprets section 1324(a)(1)(C) is establishing that the offense in 1324(a)(1)(A)(iv) does not occur *unless* the alien is induced to enter to engage in religious activity – but this is not the correct reading of the statute. Cf. United States v. South Carolina, 840 F. Supp. 2d 898 (D.S.C. 2011). Movant did not avail himself of this defense. Had he done so, he would have been required to prove the religious exception applied, which would have been impossible on this Record. Regardless, the Government was not required to prove that section 1324(a)(1)(C) does not apply.

### C. Failure to Interview Alp Aktog

---

[3]Surplusage has been removed to enhance understanding.

As mentioned in the previous section, one of the predicate acts involved Plaintiff encouraging Alp Aktog to reside or remain in the United States. Movant contends his attorney was ineffective for failing to interview Aktog. This claim is rejected for three reasons.

First, Aktog visa was not extended, and he returned to Turkey on August 3, 2009. This was approximately two and a half months after trial counsel was appointed to represent Movant. While interviewing Aktog before he left the country was not impossible, the fact is that this was an extremely complicated case, the amount of investigative material generated by the Government and to be reviewed by counsel was voluminous, and counsel would have had little time to ascertain the need to interview Aktog (assuming such a need existed).

Second, there is no indication as to what Aktog would have said at trial (beyond Movant's speculation). It is therefore impossible to find a reasonable probability that the outcome of the proceedings would have been different and, hence, no basis for concluding Movant was prejudiced by counsel's failure to preserve Aktog's testimony for use at trial. E.g., United States v. Williams, 562 F.3d 938, 942 (8th Cir. 2009); Sanders v. Trickey, 875 F.2d 205, 210 (8th Cir. 1989).

Third, even if Aktog would have testified in the manner Movant predicts, the testimony would not have created a reasonable probability of acquittal. Movant asserts Aktog would have testified that he was "actively seeking employment, legal or illegal." Reply Suggestions at 7. This testimony would not have disproved the Government's accusation that Movant encouraged Aktog to remain in the country (as set forth in Instruction No. 25): Aktog's pre-existing desire not inconsistent with a finding that Movant encouraged him by providing the actual means or arrangements to do so.

### D. Failure to Investigate the Crime of Wire Fraud

While this argument's title is couched in terms of ineffective assistance of counsel, the substance of Movant's argument is that he was innocent of the crime charged and the evidence does not support a conviction. The Court will not recount the

evidence or Movant's arguments because the substance of this claim is not cognizable in a postconviction proceeding. The issues Movant has raised should have been raised on direct appeal: having failed to do so, he cannot use a postconviction proceeding as a substitute for his foregone opportunity to appeal. E.g., Auman v. United States, 67 F.3d 157, 160-61 (8th Cir. 1995).

### E. Withdrawn by Movant

Movant's fifth claim for relief was withdrawn by Movant. See Movant's Motion to Take Judicial Notice (Doc. # 30); Movant's Reply Suggestions at 15. The claim is dismissed without further discussion.

### F. "Failing to Defend Against an Invalid Government Theory"

Returning to the racketeering act involving Alp Aktog discussed in subsections (B) and (C), above, Movant argues his attorney was ineffective for failing to argue that Aktog was already in the country illegally so Movant could not be criminally responsible for causing him to come to the United States. Counsel was not ineffective because the argument Movant posits misapprehends the law. At a minimum, Movant's actions encouraged Aktog to "reside in the United States, knowing or in reckless disregard of the fact that such . . . residence is or will be in violation of the law." 8 U.S.C. § 1324(a)(1)(A)(iv). Indeed, this is the theory that Instruction No. 25 embodies.

### G. Withdrawn by Movant

Movant's seventh claim for relief was withdrawn by Movant. See Movant's Motion to Take Judicial Notice (Doc. # 30); Movant's Reply Suggestions at 17. The claim is dismissed without further discussion.

### H. Erroneous Transcripts

Movant contends the Trial Transcript is erroneous and has been "doctored." By way of background, the Court notes that in the criminal case Movant requested a copy of audio recordings used by the Court Reporter, but the Court held they were not available for production because they were the Court Reporter's property and did not have to be produced under either the Constitution or statute. Movant was provided an opportunity to review the Court Reporter's notes. Specifically, arrangements were made to permit his mother to review them, but that offer has never been acted upon. The Court also held the sole error identified by Movant at that time would not justify relief. This sole error was reiterated as the basis for Movant's seventh ground for relief, which he has now abandoned. Beyond his bare (and fantastic) assertion that his attorney actually tried to convince the jury that Movant was guilty, there is nothing to suggest that it actually happened. The entire transcript is a testament to his attorney's efforts on his behalf. Movant cannot create a factual issue about supposed omissions by claiming things were said and then rely on their absence from the Transcript to prove his point.

Nonetheless, Movant persists in his effort to rewrite the Transcript through innuendo and obtain relief based on his revisions. He now presents an affidavit from his sister, who avers that the prosecutor made certain statements during closing but those statements are not in the Transcript. In truth, the substance of the testimony she describes appears in the Transcript. See Transcript at 793, 803, 806.

Movant has not made a showing that there are errors in the Trial Transcript. There is no basis for relief in this claim.

### *I. Withdrawn by Movant*

Movant's ninth claim for relief was withdrawn by Movant. See Movant's Motion to Take Judicial Notice (Doc. # 30); Movant's Reply Suggestions at 22. The claim is dismissed without further discussion.

### J. Failure to Object to Response to Jury's Note

During deliberations, the jury sent out two notes. At issue in this claim is the second note, which asked for certain exhibits and clarification of Instruction No. 25. Movant's complaint with the Court's answer and counsel's conduct is rather non-specific. He seems to be alleging that he was somehow prejudiced simply because the jury was confused and asked for further guidance, which – even if true – would not entitle him to relief. The practice of permitting a jury to seek clarification through notes is so well-established that if the mere use of the procedure entitled a defendant to a new trial, few verdicts would stand. See United States v. Bartley, 855 F.2d 547, 551 (8th Cir. 1988) (describing standard for answering jury notes). Movant does not specify any error or, more importantly, any failing on the part of counsel. Nothing in this allegation justifies postconviction relief.

### *K. Withdrawn by Movant*

Movant's eleventh claim for relief was withdrawn by Movant. See Movant's Motion to Take Judicial Notice (Doc. # 30); Movant's Reply Suggestions at 23. The claim is dismissed without further discussion.

### L. Failure to Object to Amounts of Loss and Number of Victims

Movant contends the amount of loss was improperly calculated. He concedes that his attorney objected to the loss calculation, but argues that his attorney failed to assert potentially viable objections. In particular, Movant argues the loss calculation included not only losses suffered by the foreign workers but also losses suffered by the companies that employed them. He contends these figures were not proved at trial, but ignores the fact that they were proved at the sentencing hearing. Movant also argues these entities were actually beneficiaries of the illegal conduct, but this novel argument

9

ignores the factual record. Movant has not identified an argument that would have likely affected the outcome, so Strickland's prejudice prong has not been satisfied.

### III. DENIAL OF CERTIFICATE OF APPEALABILITY

In order to appeal, Petitioner must first obtain a Certificate of Appealability. The Court customarily issues an Order addressing the Certificate of Appealability contemporaneously with the order on the Petition because the issues are fresh in the Court's mind and efficiency is promoted. See Rule 11(b), Rules Governing Section 2254/2255 Proceedings. 28 U.S.C. § 2253(c)(2) provides that a Certificate of Appealability should be granted "only if the applicant has made a substantial showing of the denial of a constitutional right." This requires Petitioner to demonstrate "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." Miller-El v. Cockrell, 537 U.S. 322, 336 (2003) (quotation omitted).

None of Movant's arguments deserve further consideration. His arguments depend on clear misunderstandings of the law or on factual assertions that defy belief. Accordingly, a Certificate of Appealability is denied.

### IV. CONCLUSION

The Motion for Postconviction Relief is denied. A Certificate of Appealability will not be issued.
IT IS SO ORDERED.

/s/ Ortrie D. Smith
ORTRIE D. SMITH, SENIOR JUDGE
DATE: July 24, 2012          UNITED STATES DISTRICT COURT